IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-36-D

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SALIX PHARMACEUTICALS, INC., )<br>SALIX PHARMACEUTICALS, LTD., )<br>and JOHN DOE 1–10, )<br>)<br>Defendants. ) | **ORDER** |

On May 11, 2015, Salix Pharmaceuticals, Inc., and Salix Pharmaceuticals, Ltd. ("Salix" or "defendants") filed a motion for judgment on the pleadings concerning Physicians Healthsource, Inc.'s ("Physicians Healthsource" or "plaintiff") claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). See [D.E. 27]; Fed. R. Civ. P. 12(c). On June 11, 2015, Physicians Healthsource responded in opposition. See [D.E. 31]. On June 23, 2015, Salix replied. See [D.E. 32]. As explained below, the court denies Salix's motion for judgment on the pleadings.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogation on other grounds recognized by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio

Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). The court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The same standard of review applies under Rule 12(b)(6) and Rule 12(c). See, e.g., Burbach Broad. Co. of Del., 278 F.3d at 405–06. When a court reviews a motion for judgment on the pleadings, it must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013); Burbach Broad. Co. of Del., 278 F.3d at 406. Nevertheless, when analyzing a motion for judgment on the pleadings, a court must determine whether a pleading is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–70 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Thus, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Moreover, a court need not accept a pleading's legal conclusions drawn from the facts. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted).

The TCPA makes it unlawful for "any person . . . to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is "any

2

material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5); see also Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc., 788 F.3d 218, 222 (6th Cir. 2015) ("An advertisement is any material that promotes the sale . . . of any property, goods, or services available to be bought or sold so some entity can profit.").

Physicians Healthsource has plausibly alleged that the first two attached faxes are "unsolicited advertisement[s]" within the meaning of 47 U.S.C. § 227(b)(1)(C). The faxes are unsolicited. See Compl. [D.E. 1] ¶ 13. Both faxes include a banner across the top that states, "To effectively maintain remission, transition your UC patients to low cost Apriso 1.5 g." See [D.E. 1-1] 1–2. Salix has a direct pecuniary interest in healthcare professionals appropriately prescribing Apriso to their patients. See, e.g., Sandusky, 788 F.3d at 222; Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F. Supp. 3d 482, 491 (W.D. Mich. 2015). Accordingly, Physicians Healthsource has plausibly alleged that the banner, which describes the alleged availability and qualities of Apriso, is an unsolicited advertisement.

Physicians Healthsource also has plausibly alleged that the remaining attached faxes are unsolicited advertisements. The faxes are unsolicited. See Compl. ¶ 13. These faxes all relate to Solesta, a fecal-incontinence drug. See [D.E. 1-1] 3–9. The majority of each fax is taken up by an invitation to a "hands-on station" or "hands-on workshop" at which the participants will, for example, be given "important product information, proper syringe assembly instructions, hands-on injection technique training and post procedure patient care information." See, e.g., [D.E. 1-1] 3, 5. Each fax also contains, however, a banner that states "For greater control over FECAL INCONTINENCE" and "A quick, nonsurgical injectable option–an outpatient procedure without

3

anesthesia," as well as the Solesta logo. See, e.g., id.; cf. Ira Holtzman, C.P.A. v. Turza, 728 F.3d 682, 687 (7th Cir. 2013) ("That 75% of the page is not an ad does not detract from the fact that the fax contains an advertisement."). Each fax also contains the Salix logo and a link to a website for "Complete Prescribing Information." See, e.g., [D.E. 1-1] 3, 5. It is plausible that these faxes describe the availability of Solesta, by means of a link to prescribing information, and its quality of controlling fecal incontinence through nonintrusive means. Moreover, Salix has a direct pecuniary interest in physicians appropriately prescribing Solesta to their patients. Accordingly, Physicians Healthsource has plausibly alleged that these faxes are unsolicited advertisements.

In opposition to this conclusion, Salix relies on the Sixth Circuit's Sandusky decision. In Sandusky, the defendant, Medco Health Solutions, Inc. ("Medco"), was a "pharmacy benefit manager" that provided services to health-plan sponsors, such as employers. Sandusky, 788 F.3d at 220. Medco's services included "keeping and updating a list of medicines (known as the 'formulary') that are available through a healthcare plan." Id. at 220. Unlike Salix, Medco did not manufacture or sell the drugs themselves. Medco sent the plaintiff two faxes, one of which was the formulary and the other of which was an update to the formulary. Id. at 220–21. The plaintiff, a healthcare provider, claimed that these faxes violated the TCPA. Id.

In affirming the district court's grant of summary judgment to Medco, the Sixth Circuit acknowledged that the faxes contained information concerning the availability of Medco's product, the formulary. See id. at 222. The Sixth Circuit concluded, however, that the faxes lacked the required commercial aspect because "Medco ha[d] no interest whatsoever in soliciting business from [the plaintiff]" and the faxes were "not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] or others similarly situated." Id. (emphasis added). Rather, Medco's faxes were to "inform [the plaintiff] what drugs its patients might prefer, based on Medco's formulary—a paid

4

service already rendered not to [the plaintiff] but to Medco's clients." Id. Unlike Medco, which had "no interest . . . in soliciting business from [the plaintiff]," Salix has a pecuniary interest in Physicians Healthsource employees prescribing Apriso and Solesta to patients. Sandusky, on its facts, does not help Salix.[1]

In sum, the court DENIES defendants' motion for judgment on the pleadings [D.E. 27].

SO ORDERED. This 7 day of August 2015.

JAMES C. DEVER III
Chief United States District Judge

---

[1] The potential benefit that Salix may derive from plaintiff's employees prescribing Apriso or Solesta is not the "extraneous and speculative down-the-stream evidence" that the Sandusky court referenced. Sandusky, 788 F.3d at 225; see Def.'s Reply [D.E. 32] 6. In Sandusky, the plaintiff argued that Medco's past behavior of "having operated a mail-order pharmacy" created the potential that Medco might again, in the future, directly sell drugs, or that Medco "might financially benefit from these faxes several locks down the stream of commerce (conceivably through one of its illegal schemes)." Sandusky, 778 F.3d at 225. As the manufacturer of the drugs in question, Salix's commercial motivations for sending the faxes to plaintiff are not "ancillary, remote, and hypothetical." Id. The other cases that Salix cites in support of its motion for judgment on the pleadings are also distinguishable on their facts.

5